#29151-a-DG
**2021 S.D. 10**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

STATE OF SOUTH DAKOTA,  Plaintiff and Appellee,

v.

WILLIAM THOMAN,  Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
PENNINGTON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE JEFFREY R. CONNOLLY
Judge

* * * *

JASON R. RAVNSBORG
Attorney General

MATTHEW W. TEMPLAR
Assistant Attorney General
Pierre, South Dakota  Attorneys for plaintiff and
appellee.

ELLERY GREY of
Grey & Eisenbraun Law
Rapid City, South Dakota  Attorneys for defendant and
appellant.

* * * *

ARGUED
NOVEMBER 18, 2020
OPINION FILED **02/17/21**

GILBERTSON, Retired Chief Justice

[¶1.]     William Thoman requested that a friend, Kenneth Jones, acquire a gun for him so that he could kill the doctor who treated his wife. Due to this conduct, Thoman was charged and subsequently convicted of criminal solicitation of aiding and abetting first-degree murder. In pretrial and post-trial motions, Thoman argued that one cannot criminally solicit another to aid and abet an offense. The circuit court denied both motions. Thoman appeals, arguing that the court erroneously denied his motions, erred in denying his requested jury instruction, and erred in the admission of the doctor's testimony. We affirm.

## Background

[¶2.]     On October 3, 2018, William Thoman (Thoman) was indicted on the counts of: (1) attempted first-degree murder of Dr. Mustafa Sahin (Dr. Sahin); and (2) criminal solicitation. The State subsequently dismissed the first count of attempted murder. At issue is the indictment's second count which charges, "[]he did, with the intent to promote or facilitate the commission of a crime, to wit: Aiding and Abetting First Degree Murder, command, hire, request, or solicit another person, to engage in specific conduct which would constitute the commission of such offense or an attempt to commit such offense, in violation of SDCL 22-4A-1(1)[.]"

[¶3.]     The events leading to the charge began with Dr. Sahin's treatment of Thoman's, now-deceased wife, Kathy. Dr. Sahin's treatment of Kathy began in the summer of 2017 when he informed her that a prior diagnosis of glandular lung cancer was incorrect. He instead diagnosed her with small cell lung cancer and recommended six rounds of chemotherapy. After treatment, Dr. Sahin performed a

scan which showed no visible evidence of cancer. However, he informed Kathy and Thoman that microscopic deposits were probably present. Around late January 2018, Thoman left Dr. Sahin a threatening message stating that Kathy was hospitalized. Dr. Sahin ordered a scan of Kathy, which revealed that the cancer had spread to her brain. During Kathy's hospitalization, Dr. Sahin visited with Thoman in Kathy's hospital room. Thoman threatened to drive his truck through the cancer center into Dr. Sahin's office. Dr. Sahin did not call security because Thoman was Kathy's only caregiver. At this point, Dr. Sahin recommended that Kathy seek hospice care or experimental treatment at the Mayo Clinic. Dr. Sahin had no further interactions with Thoman until police detectives informed him that Thoman was making threats against his life.

[¶4.] Around September 2018, after the passing of Kathy, Thoman visited his friend Kenneth Jones (Jones) at Jones's office. The conversation started normally, but then Thoman asked Jones, in a somber tone, if he knew anyone that could do away with somebody. Thoman was referring to a comment Jones made over fifteen years ago about knowing "this friend in New York that could [kill somebody] for a round-trip ticket and 100 bucks." Jones explained to Thoman that his comment was a joke. Thoman went on to ask Jones if he could get him a handgun. Jones responded that the "last thing I'm going to do is get you a gun[,] so you can off yourself." Thoman responded that he was not going to kill himself but rather the doctor who treated Kathy because he held the doctor responsible for Kathy's death. Later in the conversation, Thoman expressed a desire to acquire a silencer or saw off the barrel of a gun because he wanted to see the doctor's eyes

when he died. Jones asked Thoman if he had guns of his own. He responded, "yes," but explained that he needed a gun that was untraceable or unmarked. Jones asked Thoman if Kathy would want him to kill the doctor to which Thoman also responded, "yes."

[¶5.] After Thoman left Jones's office, Jones contacted his cousin who was a law enforcement officer because he was concerned for both Thoman and the doctor. His cousin turned the case over to a detective. Jones related the details of his conversation with Thoman to the detective who then asked Jones to make a recorded phone call to Thoman.

[¶6.] Jones agreed, and in the recorded conversation, Jones expressed concern for Thoman. He told Thoman that he was unable to come up with a gun. Jones encouraged Thoman to get help, but Thoman told Jones that talking to him was enough. Jones asked if Thoman was still hellbent on "smoking" the doctor; to which Thoman responded, "One way or another he'll get taken care of, is the way I look at it; and if I can help that process along, by God I will." Thoman later said, "As far as literally shooting the guy that's what I would rather do, but he comes up to maybe my rib cage in height and I could just twist his head off. You know it would be just about as easy." Thoman later told Jones a story about going into the chemotherapy department to discuss a bill. While there, he saw Dr. Sahin and said, "There's that son of a bitch I'd like to get." Thoman explained that he has been thinking about killing Dr. Sahin since the December or January before Kathy died. He commented that if you are going to have a plan you ought to have a good plan. Jones asked if he could have Thoman's guns, to which Thoman responded that his

guns are under lock and key, and he did not want to use his guns to kill Dr. Sahin because they have sentimental value. He further commented that shooting Dr. Sahin would be like "shooting a dog." Thoman went on to say that he looked at the doors in the hospital's chemotherapy department and noted that they are just wide enough to drive his truck through, but he did not act because he did not want to hurt other people besides the doctor. Thoman later stated that, if Jones had given him a gun, he would have needed the plan to come closer to fruition before acting, but he liked the option of personally killing Dr. Sahin. Then he said that right now it is just an option, and he would call Jones before he did anything.

[¶7.] As a result of the conversation, detectives conducted surveillance on Thoman's house. Law enforcement eventually arrested Thoman and, upon executing a search warrant at his residence, recovered ten firearms and ammunition.

[¶8.] On October 25, 2018, Thoman filed a motion to dismiss the criminal solicitation charge for failure to describe a public offense under SDCL 23A-8-2(5). He claimed solicitation of aiding and abetting murder is not an offense, arguing that one cannot solicit an inchoate offense.[1] He noted that solicitation requires the defendant to solicit a person to engage in "specific conduct" that constitutes the

---

1. The indictment charged Thoman with criminal solicitation under SDCL 22-4A-1. The statute's plain language provides, "Any person who, with the intent to promote or facilitate the commission of a crime . . . solicits another person to engage in specific conduct which would constitute the commission of such offense or *an attempt to commit such offense*, is guilty of criminal solicitation." SDCL 22-4A-1 (emphasis added). Although Thoman did not complete the murder of Dr. Sahin, the statute's broad language includes a defendant's attempt to complete the crime's underlying offense.

commission of a crime, and the alleged crime solicited here was aiding and abetting first-degree murder, which, as Thoman points out, requires the completion of the underlying offense. Therefore, he argues that since the underlying offense (murder) did not occur, the alleged solicited "specific conduct" (aiding and abetting murder) was not a crime. The circuit court denied Thoman's motion, reasoning that the crime of solicitation is complete once the accused solicits another to commit the offense, therefore, the solicited individual does not have to complete the underlying crime.

[¶9.] A four-day trial commenced on August 19, 2019. Dr. Sahin testified about his treatment of Kathy and Thoman's threats against him, including his own reactions to the threats. He explained that police detectives informed him that they had credible information that Thoman was trying to hire a hit man to kill him. After law enforcement told him to take precautions, Dr. Sahin testified that he, "immediately rushed [] home, collected my mother and we went out of town." He shared that he took the threat seriously and was worried about their safety because a hired hit man may be out to kill him. He further testified that the incident caused him mental strife, which resulted in him leaving Rapid City Regional Hospital. Thoman repeatedly objected to the testimony on the grounds of relevancy and prejudice under evidentiary Rules 401 and 403 and contended that the testimony was "[i]mproper 702."

[¶10.] Multiple witnesses testified regarding Thoman's anger and his desire to harm Dr. Sahin. Daniel Groethe, a neighbor, testified that in July 2018, he overheard Thoman saying that he "would like to go after a doctor with a shotgun."

#29151

Garrett Leon and Kylie Kintigh, the officers who responded to Kathy's death, testified that Thoman expressed anger when referring to Kathy's treatment in Rapid City. Jones testified about his conversation with Thoman, and the State played the recording of Thoman's and Jones's conversation. On cross-examination, Jones testified that Thoman did not command, hire, or solicit him to kill the doctor. Finally, Ronaldo Sasso, a neighbor, testified that Thoman discussed with him the filing of a malpractice suit against Kathy's oncologist and expressed that he wanted to harm the doctor, but Sasso's biggest concern was Thoman committing suicide.

[¶11.]       The State also presented testimony from two jail inmates, whom Thoman allegedly approached while in pretrial custody, about hiring a hitman. Inmate Dustin Eck (Eck) testified that Thoman approached him while in jail about hiring someone to take care of Judge Pfeifle and Jones. He gave Thoman the phone number of an alleged hitman. The sheriff's department provided and monitored the number, but Thoman never called it. Eck stated that he was not receiving anything for testifying against Thoman, including a reduction in sentence. Thoman later recalled Eck who admitted that he had, in a prior case, received a sentence reduction and, although the State did not promise him a sentence reduction, he was hoping for a reduction for coming forward with this information about Thoman. Another inmate named Jerrod James Murphy (Murphy) testified that Thoman asked him if he knew somebody who could take care of somebody. Murphy said he talked about Thoman's request with Eck, whom he referred to as a loyal friend, but Eck testified that he did not really know Murphy. Thoman later presented evidence that Murphy inquired about receiving a reduction in sentence for his testimony. At

the close of the State's case-in-chief, Thoman moved for a judgment of acquittal. The circuit court held its ruling in abeyance.

[¶12.]    Prior to submitting the case to the jury, Thoman moved to instruct the jury on the definition of aiding and abetting found in South Dakota Pattern Jury Instruction 3-28-5,[2] which requires the underlying offense to have been committed. The circuit court denied the instruction. Instead, the court instructed the jury that the elements of criminal solicitation are that the defendant (1) acted with the "specific intent" to promote or facilitate the crime of murder in the first degree, (2) commanded, hired, requested, or solicited another person to engage in specific conduct which would constitute the commission of aiding or abetting murder in the first degree; and (3) did so intentionally. A separate instruction advised the jury that "[a]ny person who, with the intent to promote or facilitate the commission of a crime, aids, abets, or advises another person in planning or committing the crime, is legally accountable, as principal to the crime."[3]

[¶13.]    The State advanced the following two theories of guilt: (1) Thoman solicited Jones to hire a hit man; and (2) Thoman solicited Jones to obtain a firearm so Thoman could kill Dr. Sahin. The court instructed the jury that it must

---

2.    South Dakota pattern jury instruction 3-28-5 provides in part: "To prove a defendant guilty of [first-degree murder] by aiding and abetting, the State must prove . . . beyond a reasonable doubt: First, [first-degree murder] was committed by someone . . ."

3.    During its deliberation, the jury sent the court two questions. The first requested the definition of "solicitation" as used in the instructions; and the second requested the definition of "aid and abet" as used on the verdict form. After discussing the questions with counsel, the court responded, "You should rely on the instructions that I have given you, and the definitions therein."

unanimously agree on a theory. The jury ultimately found Thoman guilty of criminal solicitation to aid and abet first-degree murder under the second theory–asking Jones to obtain a firearm.

[¶14.] At the sentencing hearing, Thoman amended his motion for judgment of acquittal to a motion to arrest judgment under SDCL 23A-30-1. The circuit court denied the motion holding that the State presented sufficient evidence to support the verdict and SDCL 22-4A-1 allows for a charge of solicitation of aiding and abetting first-degree murder.

[¶15.] Thoman appeals raising the following issues:

1. Whether the circuit court erred in denying Thoman's pretrial motion to dismiss for failure to describe a public offense and post-trial motion to arrest judgment.

2. Whether the circuit court erroneously instructed the jury on the elements of aiding, abetting, or advising.

3. Whether the circuit court erred in denying Thoman's motion for judgment of acquittal.

4. Whether the circuit court erred in overruling Thoman's objections to Dr. Sahin's testimony.

## Analysis

***1. Whether the circuit court erred in denying Thoman's pretrial motion to dismiss for failure to describe a public offense and post-trial motion to arrest judgment.***

[¶16.] Thoman's pretrial and post-trial motions both sought a ruling from the circuit court that the State did not charge him with an offense prohibited by our criminal code. In support of his pretrial motion, Thoman relies upon SDCL 23A-8-2(5), which provides that a circuit court must dismiss an indictment, "[w]hen it does

not describe a public offense[.]" In support of his post-trial motion to arrest judgment, Thoman relies upon SDCL 23A-30-1, which directs that "[a] court shall arrest judgment if an indictment . . . does not charge an offense[.]" Thoman argues his indictment did not describe a public offense because, in his view, SDCL 22-4A-1 does not include the solicitation of inchoate crimes.

[¶17.]     The issue before this Court is one of statutory interpretation, which we review de novo. *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 8, 932 N.W.2d 135, 138. This Court's rules of statutory interpretation are well settled. "In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole." *Id.* ¶ 11, 932 N.W.2d at 139 (quoting *State v. Bowers*, 2018 S.D. 50, ¶ 16, 915 N.W.2d 161, 166). "[I]f the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction." *Id.* (quoting *State v. Bariteau*, 2016 S.D. 57, ¶ 15, 884 N.W.2d 169, 175). Further, "all penal statutes shall be construed according to the fair import of their terms, with a view to effect their objects and promote justice." SDCL 22-1-1.

[¶18.]     A jury found Thoman guilty of criminal solicitation to aid and abet first-degree murder under SDCL 22-4A-1. It provides, in part, that, "Any person who, with the intent to promote or facilitate the commission of a crime, commands, hires, requests, or solicits another person to engage in specific conduct which would constitute the commission of such offense or an attempt to commit such offense, is guilty of criminal solicitation." SDCL 22-4A-1.

[¶19.]    Thoman argues that the circuit court erred by denying his motion to dismiss the indictment and his motion to arrest judgment because he was charged and convicted of an action the Legislature did not intend to punish under SDCL 22-4A-1. Solicitation, he claims, is an inchoate crime and in his view, a prerequisite of such a crime should be the taking of a substantial step toward the "object crime." In his case, aiding and abetting first-degree murder is the object crime he allegedly solicited. Thoman further notes that under our established law an essential element of aiding and abetting is that the crime's principal actor must commit the underlying crime, which in Thoman's case was murder. *See State v. Jucht*, 2012 S.D. 66, ¶ 22, 821 N.W.2d 629, 634. Therefore, in his case because one cannot be convicted of aiding and abetting an offense which does not come to fruition, Thoman argues that it is likewise legally and factually impossible for him to have committed the crime of *solicitation* of aiding and abetting murder where the underlying crime of murder was never committed. Thoman argues the Legislature did not intend SDCL 22-4A-1 to punish this type of behavior. He suggests that to conclude otherwise would merge the inchoate crimes of solicitation and aiding or abetting.

[¶20.]    Thoman additionally argues the plain language of SDCL 22-4A-1 does not prohibit a defendant from merely asking another to help the defendant commit the crime himself. Instead, he contends that it only prohibits a defendant from soliciting *another person* to "engage in specific conduct," which would constitute the commission or attempted commission of the underlying offense. Since Thoman desired to kill Dr. Sahin himself, he argues that he could not have committed solicitation under the statute's plain language, which requires the solicitation of a

*third party*.  Further, Thoman advances that if the Legislature intended the crime of solicitation to include the act of solicitating another to aid and abet a crime, it would have included the phrase within the statute.

[¶21.]     This Court has not interpreted the elements of solicitation under SDCL 22-4A-1.  As Thoman argues, the Legislature enacted this solicitation statute in 2005, a year after this Court's decision in *State v. Disanto*, 2004 S.D. 112, 688 N.W.2d 201.  In *Disanto*, the defendant was convicted of three counts of attempted murder for hiring a hitman to kill the individuals.  *Id.* ¶ 14, 688 N.W.2d at 206.  The Court analyzed whether the defendant completed a sufficient act to constitute attempted murder or whether his actions were mere preparations.  *Id.* ¶ 20, 688 N.W.2d at 207.  In our analysis, we drew a distinction between *solicitation* of murder and *attempted* murder.  *Id.* ¶ 21, 688 N.W.2d at 208.  "[T]he general rule 'is the recognition that solicitation is in the nature of the incitement or encouragement of another to commit a crime in the future [and so] it is essentially preparatory to the commission of the targeted offense.'"  *Id.* ¶ 25, 688 N.W.2d at 209 (quoting *State v. Otto*, 629 P.2d 646, 648 n.4 (1981)).  The Court held that attempted murder requires a substantial step towards the murder's completion and found "acts of mere preparation" are not enough.  In so holding, we distinguished between an attempt to commit the crime and the solicitation of a crime, which requires no "overt act."  *Id.* ¶ 40, 688 N.W.2d at 213.  As the defendant in *Disanto* had merely "asked" or solicited the hitman to kill his ex-girlfriend, the Court concluded he did not commit *attempted* murder.  *Id.*

[¶22.] Likely in response to *Disanto's* outcome, the Legislature enacted SDCL 22-4A-1. *See AEG Processing Ctr. No. 58, Inc. v. S.D. Dep't of Revenue*, 2013 S.D. 75, ¶ 12, 838 N.W.2d 843, 848 ("We presume the Legislature acts with knowledge of our judicial decisions."). In *Disanto*, we defined solicitation broadly as a preparatory offense, which does not require an overt act or a substantial step towards its "object crime."

[¶23.] In examining SDCL 22-4A-1's plain language, a defendant commits the offense of solicitation when: (1) "with the intent to promote or facilitate the commission of a crime"; (2) the defendant "commands, hires, requests, or solicits another person to engage in specific conduct which would constitute the commission of such offense or an attempt to commit such offense;" and (3) the defendant does so intentionally. Absent from the crime's elements is the requirement that a substantial step or an overt act be taken by either the solicitor or the one solicited. In fact, SDCL 22-4A-2 states, "It is not a defense . . . that the person solicited neither committed or attempted to commit the offense solicited . . . ." The defendant completes the act when he or she asks another to commit the underlying crime with the specific intent to promote that crime. The act of "asking" another person to engage in specific criminal conduct is the *actus reus*. *State v. Everett*, 330 P.3d 22, 25 (Or. 2014) ("The crime of solicitation is complete upon the act of soliciting[.]"); *see also State v. DePriest*, 907 P.2d 868, 874 (Kan. 1995) ("The crime is complete when the person communicates the solicitation to another with the requisite mens rea.").

[¶24.] Here, Thoman committed the crime of solicitation when he asked Jones, with the requisite intent, to acquire a gun for him so he could kill Dr. Sahin.

The "specific conduct" he asked Jones to engage in was the obtaining of a gun to kill Dr. Sahin. Had Jones acquired the gun and given it to Thoman knowing that Thoman wanted the gun to kill Dr. Sahin, and Thoman thereafter committed the murder, Jones's actions would have constituted the offense of aiding or abetting murder. Therefore, Thoman's solicitation of Jones to engage in this type of conduct fulfills the requirements of SDCL 22-4A-1 in that the act solicited from Jones, if carried out, would constitute the commission of a crime.

[¶25.] This reading further comports with SDCL 22-4A-1's broad definition of a crime capable of solicitation. SDCL 22-4A-1 permits a defendant to be guilty of criminal solicitation when he or she intentionally promotes or facilitates the "commission of a crime[.]" The statute then classifies the prescribed punishments based upon the solicited felony. Definitionally, an act is a crime if it is so prescribed by SDCL chapter 22 or another South Dakota statute. SDCL 22-1-8. SDCL 22-3-3 defines aiding and abetting and provides that the defendant "is legally accountable, as a principal to the crime." A defendant convicted of aiding and abetting first-degree murder faces punishment for first-degree murder, which is a Class A felony. SDCL 22-16-12. As such, it falls within the SDCL 22-4A-1's broad definition of "a crime" capable of solicitation. If Thoman succeeded in his plan, Jones would face punishment for first-degree murder for providing Thoman the gun, regardless of which party killed Dr. Sahin. The plain language of SDCL 22-4A-1 fails to limit the crimes capable of solicitation. *Cf. People v. Terrell*, 792 N.E.2d 357, 362 (Ill. App. Ct. 2003) (overturning defendant's conviction for solicitation of murder because

statute narrowly defined solicitation in a manner that precluded aiding and abetting murder).[4]

[¶26.] The case of *People v. Harsit*, which the circuit court relied on, provides guidance. 745 N.Y.S.2d 872 (N.Y. Sup. Ct. 2002). In *Harsit*, the defendant sought to procure a gun from two undercover agents in order to kill a judge. *Id.* at 878. The defendant argued that the State could not charge him with solicitation because he did not ask a third party to commit the crime but rather personally intended to use the gun. *Id.* New York's statute similarly criminalizes the solicitation of "conduct constituting a crime." *Id.* The court held that the definition of solicitation clearly reaches solicitation to aid and abet the commission of a crime. *Id.* It found irrelevant that the solicited undercover agents had no intent to commit the murder. *Id.* at 879. The important fact was that the defendant requested that they commit the conduct, which if committed, would make them an aider and abettor of murder. *Id.*; *see also Everett*, 330 P.3d at 26 (individual appropriately convicted of solicitation to aid and abet murder even though the underlying murder did not occur). This same analysis applies here.

[¶27.] We further reject Thoman's additional argument that the State's reading of SDCL 22-4A-1 merges the crimes of solicitation and aiding or abetting.

---

4.  Illinois's "solicitation of murder" statute at the time provided, "A person commits solicitation of murder when, with the intent that the offense of first degree murder be committed, he commands, encourages or requests another to commit *that offense*." 720 ILCS 5/8–1.1(a) (2000) (emphasis added). While similar, SDCL 22-4A-1 refers to a broader category of conduct capable of solicitation that could encompass aiding and abetting, i.e., the solicitation of another "to engage in specific conduct which would constitute the commission of such offense or an attempt to commit such offense[.]"

He claims the Legislature enacted the solicitation statute, after *Disanto*, to keep aiding or abetting and solicitation as separate offenses. 2004 S.D. 112, 688 N.W.2d 201. However, the language enacted by the Legislature in SDCL 22-4A-1 does not support this reading.

[¶28.] The crime of solicitation of aiding and abetting first-degree murder does not merge our State's aiding or abetting and solicitation statutes. The statutes each contain different elements that the State must prove to meet its burden. Thoman is correct that "[t]o be guilty of aiding and abetting, 'the evidence must show the principal offender committed all the elements of the underlying offense.'" *State v. Tofani*, 2006 S.D. 63, ¶ 36, 719 N.W.2d 391, 400. However, solicitation does not require the completion of the underlying offense. SDCL 22-4A-2. As discussed above, the defendant completes the crime upon the ask. The two crimes occur at different stages during the criminal enterprise—solicitation occurs *prior to* the object crime's occurrence, and aiding and abetting occurs *during* the object crime's completion. The crimes remain separate acts.

[¶29.] Finally, Thoman argues that the State's reading will nullify SDCL 22-4A-4, which codifies the doctrine of renunciation. He argues the definition of renunciation assumes the defendant solicited a third party. He contends that by interpreting SDCL 22-4A-1 to encompass the scenario where a defendant solicits a crime for which he is the principal actor, renunciation of the solicitation becomes impossible. We disagree.

[¶30.] This Court's interpretation of solicitation will not nullify the renunciation statute. SDCL 22-4A-4 provides, "No person may be convicted of

criminal solicitation if . . . the defendant: (1) Notified the person solicited of his or her renunciation; and (2) Gave timely and adequate warning to the law enforcement authorities *or otherwise made a substantial effort to prevent the commission of the criminal conduct solicited*." (Emphasis added). A defendant who solicits a third party to help him or her commit the crime can renunciate by informing the third party of his or her renunciation, and then by not acting or reversing the actions he or she set in motion in furtherance of the object crime. Here, Thoman could have informed Jones of his renunciation and then taken no further steps toward attempting the murder of Dr. Sahin.

[¶31.] SDCL 22-4A-1 permits the State to charge a defendant with solicitation of aiding and abetting first-degree murder. As such, the circuit court correctly denied Thoman's pretrial motion to dismiss for failure to describe a public offense and post-trial motion to arrest judgment.

### 2. *Whether the circuit court erroneously instructed the jury on the elements of aiding, abetting, or advising.*

[¶32.] "A trial court has discretion in the wording and arrangement of its jury instructions, and therefore we generally review a trial court's decision to grant or deny a particular instruction under the abuse of discretion standard. However, no court has discretion to give incorrect, misleading, conflicting, or confusing instructions[.]" *State v. Cottier*, 2008 S.D. 79, ¶ 7, 755 N.W.2d 120, 125. "Whether the court gave incorrect or misleading instructions to a defendant's prejudice is a question of law reviewed de novo." *State v. Diaz*, 2016 S.D. 78, ¶ 42, 887 N.W.2d 751, 763. "We, therefore, consider jury instructions 'as a whole, and if the

instructions when so read correctly state the law and inform the jury, they are sufficient.'" *State v. Waloke*, 2013 S.D. 55, ¶ 28, 835 N.W.2d 105, 113.

[¶33.] Thoman argues that the circuit court failed to instruct the jury on the elements of aiding and abetting murder. He argues the court's instructions should have included the elements listed in *Jucht*, which provide that for aiding and abetting to occur, the principal must commit the underlying offense. 2012 S.D. 66, ¶ 22, 821 N.W.2d at 634. He claims the court excluded a key element of the underlying aiding and abetting offense–completion of the murder. He then concludes that this error is prejudicial because, had the circuit court instructed the jury that Thoman had to murder Dr. Sahin, the only possible verdict would have been "not guilty" as Thoman obviously did not kill Dr. Sahin. Thoman's argument misconstrues the application of SDCL 22-4A-1 to the scenario presented here.

[¶34.] The circuit court instructed the jury that, to find Thoman guilty of criminal solicitation, the State must prove beyond a reasonable doubt that: (1) Thoman acted with the specific intent to promote or facilitate first-degree murder, (2) commanded, hired, requested, or solicited another person to engage in specific conduct which would constitute the commission of aiding or abetting murder in the first degree, and (3) did so intentionally. It then instructed the jury that anyone who, with the intent to promote or facilitate the crime, aids, abets, or advises another in planning or committing the crime is legally accountable as the principal.

[¶35.] As discussed above, criminal solicitation under SDCL 22-4A-1 is a preparatory offense. *Disanto*, 2004 S.D. 112, ¶ 25, 688 N.W.2d at 209; *see also State v. Webber*, 918 P.2d 609, 623 (Kan. 1996) ("The crime is complete when the person

communicates the solicitation to another with the requisite mens rea. No act in furtherance of the target needs to be performed by either person."). It occurs when the defendant solicits another to perform a *future* criminal act. Unlike aiding and abetting, it does not require the completion of the underlying offense. SDCL 22-4A-2. Rather, SDCL 22-4A-1 requires the defendant to *solicit* an individual "to engage in specific conduct which would constitute the commission" of the object offense, here aiding and abetting first-degree murder. This is what the circuit court instructed.

[¶36.] The circuit court used the language the Legislature provided in SDCL 22-4A-1, which does not require the completion of the underlying offense. As such, the circuit court correctly applied the law, and it did not abuse its discretion in denying Thoman's requested jury instruction.

### 3. *Whether the circuit court erred in denying Thoman's motion for judgment of acquittal.*

[¶37.] "We review a denial of a motion for judgment of acquittal de novo." *State v. Armstrong*, 2020 S.D. 6, ¶ 12, 939 N.W.2d 9, 12. "In measuring the sufficiency of the evidence, we ask 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Brim*, 2010 S.D. 74, ¶ 6, 789 N.W.2d 80, 83. "[T]he jury is the exclusive judge of the credibility of the witnesses and the weight of the evidence." *Id.*

[¶38.] Thoman's argument that the State failed to prove an element of the underlying offense of aiding and abetting—completion of the offense by the principal—fails for the reasons explained above. As to whether the State presented

sufficient evidence on the elements of the crime, SDCL 22-4A-1 required the State

to prove:

> 1. the defendant, with the specific intent to promote or facilitate the crime of murder in the first degree,
> 2. commanded, hired, requested, or solicited another person to engage in specific conduct which would constitute the commission of aiding or abetting murder in the first degree,
> 3. the defendant did so intentionally.

[¶39.]     Jones, Dr. Sahin, two neighbors, and two law enforcement officers

testified that Thoman expressed anger towards Dr. Sahin.  Many of these

individuals testified that Thoman threatened to harm Dr. Sahin, and multiple

witnesses identified Thoman as the individual who made the threats.  Jones

testified that Thoman requested a gun to kill Dr. Sahin, and the State played

Thoman's and Jones's recorded conversation where Thoman stated his desire to

harm the doctor.  Law enforcement recovered guns and ammunition from Thoman's

house, which the State presented at trial.  Two inmates testified that Thoman

asked them to find a hitman to kill other individuals.  To counter the abundance of

evidence establishing solicitation, Thoman attempted to erode the State's case by

advancing a theory that Thoman was joking.

[¶40.]     In viewing the evidence in a light favorable to the State, it presented

sufficient evidence to support each of the statute's elements.  The jury could

reasonably have found the elements of solicitation beyond a reasonable doubt.

### 4.     *Whether the circuit court erred in overruling Thoman's objections to Dr. Sahin's testimony.*

[¶41.]     "Our standard of review for evidentiary rulings 'requires a two-step

process: first, to determine whether the trial court abused its discretion in making

an evidentiary ruling; and second, whether this error was a prejudicial error that in all probability affected the jury's conclusion.'" *Johnson v. United Parcel Serv., Inc.*, 2020 S.D. 39, ¶ 27, 946 N.W.2d 1, 8 (quoting *Supreme Pork, Inc. v. Master Blaster, Inc.*, 2009 S.D. 20, ¶ 59, 764 N.W.2d 474, 491).

[¶42.] Thoman classifies Dr. Sahin's testimony as victim-impact evidence which is typically admitted at a sentencing hearing. He argues Dr. Sahin's testimony is inadmissible under SDCL 19-19-401 and SDCL 19-19-403 because it did not make a fact relevant to criminal solicitation more probable. Specifically, he argues that the testimony did not help establish Thoman's criminal intent.

[¶43.] The State argues that the testimony was relevant to prove Thoman intentionally sought Jones's help to facilitate the murder of Dr. Sahin, and that Thoman had the specific intent to facilitate the murder when he solicited Jones. It argues that the testimony was necessary to show the seriousness of Thoman's threats and to combat Thoman's theory that he jokingly made the comments to Jones.

[¶44.] SDCL 19-19-401 provides: "Evidence is relevant if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action." SDCL 19-19-403 provides, "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice . . . ." "The law favors admitting relevant evidence no matter how slight its probative value." *State v. Bowker*, 2008 S.D. 61, ¶ 39, 754 N.W.2d 56, 68. However, "[e]vidence which is not

relevant is not admissible." *St. John v. Peterson (St. John II)*, 2015 S.D. 41, ¶ 14, 865 N.W.2d 125, 129.

[¶45.]     Here, the issue is whether Dr. Sahin's testimony is relevant to prove that Thoman had the specific intent to request Jones's aid in the murder of Dr. Sahin when Thoman requested the gun. Dr. Sahin testified that, after law enforcement notified him of Thoman's threats, he rushed home, picked up his mother, and left town. He further stated that the threats resulted in him experiencing symptoms akin to post-traumatic stress disorder which ultimately led to him leaving Rapid City Regional Hospital.

[¶46.]     "For evidence to be admitted during trial, it first must be found to be relevant." *St. John v. Peterson (St. John I)*, 2011 S.D. 58, ¶ 12, 804 N.W.2d 71, 75. Dr. Sahin's reaction may have been relevant to the seriousness of Thoman's threats, if Thoman had made the threat *directly to Dr. Sahin.* However, as law enforcement officers delivered the threat to Dr. Sahin, the State's line of questioning on the threat's emotional impact on Dr. Sahin holds no relevance. The State had to prove Thoman's intent at the moment he asked Jones for the gun. Dr. Sahin did not perceive the threat at that point, so his subsequent actions hold no bearing on Thoman's mental process as he delivered the earlier threat. Further, Dr. Sahin's response was not surprising given that it was delivered by law enforcement officers, which in and of itself signals the seriousness of the threat. Finally, Dr. Sahin leaving his position at the hospital and his psychological maladies, although unfortunate, occurred well after Thoman completed the act of solicitation, which dissipates its relevancy. Under these facts, the threat's impact on Dr. Sahin was

not relevant to an element of the charged offense. Dr. Sahin's testimony therefore fails to pass the relevancy threshold of SDCL 19-19-401.

[¶47.]    As the circuit court erred by finding the evidence relevant, we next examine the prejudicial effect of its admittance. "Error is prejudicial when, in all probability it produced some effect upon the final result and affected the rights of the party assigning it." *Sedlacek v. Prussman Contracting, Inc.*, 2020 S.D. 18, ¶ 16, 941 N.W.2d 819, 822-23. In determining whether the error was prejudicial, the Court weighs a number of factors: "the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony . . .[ ,]the extent of cross-examination otherwise permitted, and . . . the overall strength of the prosecution's case." *State v. Richmond*, 2019 S.D. 62, ¶ 36, 935 N.W.2d 792, 802 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 1438, 89 L. Ed. 2d 674 (1986)).

[¶48.]    Thoman argues that the error was clearly prejudicial because the State failed to present concrete evidence of Thoman's criminal intent. He notes that the State both started its case-in-chief and its closing argument with Dr. Sahin's testimony which establishes its importance to the State's case. The State responds that the error is harmless because the State presented substantial evidence, outside of Dr. Sahin's testimony, to establish Thoman's criminal intent.

[¶49.]    From our review of the record, the admission of the testimony did not, in all probability, affect the jury's verdict. The State presented a strong case to support its theory. To establish Thoman's specific intent, outside of Dr. Sahin's

testimony, two neighbors and Jones testified about Thoman's various threats toward the doctor. The jury heard an audio recording of Thoman's and Jones's conversation where Thoman discusses his desire to kill the doctor and alternative methods for causing the doctor's death. Dr. Sahin was also permitted to testify, without objection, to Thoman's prior repeated threats made during Kathy's treatment. Moreover, the jury also heard Thoman's threat, which he discussed in the recorded conversation, about driving his truck through the cancer center's doors. Further, Thoman was able to minimize the testimony's impact by questioning Dr. Sahin about his reactions to Thoman's prior threats delivered firsthand to Dr. Sahin. The improperly admitted testimony amounted to roughly five questions in a four-day trial with a dozen witnesses. In its closing, the State briefly mentioned Dr. Sahin's testimony in three sentences. The court instructed the jury on the specific intent that must exist in Thoman's mind to commit the crime of criminal solicitation[5] and that the jury must consider the case without bias or prejudice towards Thoman. The State presented substantial evidence to establish criminal solicitation, and the court properly instructed the jury on what it could consider. *See id.* ¶¶ 35-43, 935 N.W.2d at 802-04 (holding testimony admitted in violation of Confrontation Clause was harmless where testimony was limited to a few statements in a four-day trial with ten witnesses, and the State presented a strong case).

---

5.    The court instructed, "In the crime of criminal solicitation, there must exist in the mind of the defendant the specific intent to solicit the aiding and abetting of first-degree murder. If specific intent did not exist, this crime has not been committed."

[¶50.] The quantity and quality of evidence the State presented to show Thoman's intent, coupled with the limited use of Dr. Sahin's testimony, made the error harmless as in all probability it did not affect the jury's conclusion.

## Conclusion

[¶51.] SDCL 22-4A-1 permits a defendant to be charged with criminal solicitation of aiding and abetting an offense. As such, the circuit court did not err in denying Thoman's motion to dismiss the indictment and motion to arrest judgment. The circuit court properly instructed the jury because criminal solicitation does not require the completion of the underlying offense. The State presented sufficient evidence to prove the crime of criminal solicitation and, therefore, the circuit court did not err in denying Thoman's motion for judgment of acquittal. While the circuit court erroneously admitted Dr. Sahin's testimony about his reaction upon learning of Thoman's threats, the State presented a strong factual case even without this testimony. Thus, its admission was not prejudicial to Thoman. We affirm the circuit court on all issues.

[¶52.] JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.

[¶53.] MYREN, Justice, not having been a member of the Court when this action was submitted to the Court, did not participate.