2000 SD 5

**BREVET INTERNATIONAL, INC., a South Dakota Corporation, Plaintiff and Appellant,**

v.

**GREAT PLAINS LUGGAGE COMPANY, a South Dakota Corporation, Christopher D. Crosby, W. Greg Coward, and Alan Krutsch, Defendants and Appellees.**

**No. 20917.**

Supreme Court of South Dakota.

Argued Dec. 2, 1999.

Decided Jan. 12, 2000.

John R. Pekas, Sioux Falls, South Dakota, for plaintiff and appellant.

Steven W. Sanford of Cadwell, Sanford, Deibert & Garry, Sioux Falls, South Dakota, for defendants and appellees.

MILLER, Chief Justice.

[¶ 1.] This is an intermediate appeal in an action for breach of contract and fraud. We hold the trial court erred in granting partial summary judgment on the issue of fraud (Issue 1), but it correctly refused to pierce a corporate veil (Issue 2). We reverse Issue 1 and affirm Issue 2.

### FACTS

[¶ 2.] During 1994 and 1995, Great Plains Luggage Company was engaged in the business of manufacturing and selling golf bags and golf bag travel covers from its plant located at Tyndall, South Dakota. Its principal officers, directors and shareholders were Christopher D. Crosby, W. Greg Coward, and Alan Krutsch. During that time, Brevet International, Inc., provided management consulting services to businesses, universities, government entities and labor unions.

[¶ 3.] In early March 1995 Crosby contacted Brevet president Donald MacKintosh about installing a management system in its plant. Great Plains was having difficulty manufacturing its products in a cost-efficient and timely manner so as to ensure prompt delivery to its customers. Because of these difficulties, Great Plains had resolved to close unless a solution could be found for its manufacturing problems. There is no dispute that Crosby informed MacKintosh of Great Plains' precarious financial position in their initial phone conversation.

[¶ 4.] After speaking with Crosby and visiting the plant, MacKintosh orally agreed to provide management consulting services on behalf of Brevet. This agreement was never reduced to writing. The agreed-upon price for Brevet's services

was $35,000, the fee "to be paid as golf bags are produced at lesser costs from those established prior to 3/6/95," as described on the first invoice. However, out-of-pocket expenses incurred by Brevet were to be reimbursed by Great Plains as invoiced. In reliance on Brevet's assurances of success, Crosby injected $100,000 of his personal funds into the business, in addition to money he had previously invested.

[¶ 5.] Over the next three months, Brevet's consultants worked with Great Plains' plant manager installing a management system. Brevet submitted weekly invoices addressed to "Chris Crosby, The Great Plains Luggage Company," for professional fees and expenses incurred. Great Plains reimbursed Brevet for its expenses, but did not pay any of the $35,000 professional fee. Brevet sent Great Plains a final demand letter on November 28, 1995, asking for payment. Great Plains did not respond to the letter.

[¶ 6.] Despite increases in productivity, Great Plains sold its manufacturing operation in the fall of 1995. Crosby characterized the sale as "an orderly liquidation," while MacKintosh characterized it as the sale of a "going concern," as evidenced by the fact that only one buyer bought the assets and continued to produce the same golf bags, with the same machines, with the same employees, in the same building, utilizing the Brevet management system.

[¶ 7.] There is much dispute about the specific terms of the consulting arrangement. First, there is disagreement about the identity of the entity that contracted with Brevet. Brevet maintains that it contracted with the individual defendants, not the corporation. Crosby and the other individual defendants argue, however, that the contract was between Great Plains (the corporation) and Brevet. Additionally, Brevet claims its consulting fee was to be paid from savings realized by the reduced cost of production achieved through the implementation of its management system. While Great Plains generally agrees that

Brevet's fees were to be contingent upon its performance, it asserts that it was to have no obligation unless Brevet fulfilled its promises of improved manufacturing and delivery. Further, Great Plains claims Brevet did not succeed as promised in reversing its manufacturing problems, which caused the business to fail. In contrast, Brevet claims it significantly improved Great Plains manufacturing productivity, but that Great Plains did not have the sales orders necessary to meet the increased production. Brevet contends it was hired to improve the manufacturing end of the business, and that it is not responsible for the sales component.

[¶ 8.] Brevet initiated this suit against Great Plains and the individual defendants alleging breach of contract and fraud, for failure to pay the management consulting fee. In response, Great Plains and the individual defendants filed a counterclaim against Brevet, alleging breach of contract and breach of warranty or, in the alternative, negligent representation of warranty and negligent contract performance. In addition, Great Plains and the individual defendants filed a motion for partial summary judgment with respect to the breach of contract claim (against the individual defendants), and the fraud claim (against all defendants).

[¶ 9.] The trial court ultimately issued a memorandum decision, followed by an order granting defendants' motion for partial summary judgment. What remained of Brevet's suit, namely the breach of contract claim against corporate defendant Great Plains, and Great Plains' counterclaim against Brevet were to proceed to jury trial. However, on the morning of trial, discussions between the court and counsel revealed disagreement about how to proceed in light of the partial summary judgment.

[¶ 10.] In chambers, the court agreed with Brevet that evidence relating to the fraud claim should be admitted, because it was also relevant to Brevet's defense to

Great Plains' counterclaim. However, the court opined that such admission of fraud evidence would give Great Plains the option of either moving for a continuance or a mistrial, since its counsel had relied upon the partial summary judgment and was not prepared to address issues of fraud. Under the circumstances, the trial court aborted the jury trial and encouraged Brevet to attempt to take an intermediate appeal to this Court from the partial summary judgment. In order to facilitate this, the court entered an amended order for partial summary judgment in which it certified entry of partial summary judgment as a final judgment pursuant to SDCL 15–6–54(b).[1] A petition for permission to take a discretionary intermediate appeal was later granted by this Court.

[¶ 11.] On appeal, Brevet raises the following issues:

1) Whether genuine issues of material fact exist so as to preclude the granting of partial summary judgment on the fraud claim.

2) Whether the trial court properly refused to pierce the corporate veil and hold the individual defendants personally liable.

### STANDARD OF REVIEW

[¶ 12.] Our review of a trial court's granting of summary judgment is well settled.

"In reviewing a grant or a denial of summary judgment under SDCL 15–6–56(c), we must determine whether the moving party demonstrated the absence of any genuine issue of material fact and showed entitlement to judgment on the merits as a matter of law. The evidence must be viewed most favorably to the nonmoving party and reasonable doubts should be resolved against the moving party. The nonmoving party, however, must present specific facts showing that a genuine, material issue for trial exists. Our task on appeal is to determine only whether a genuine issue of material fact exists and whether the law was correctly applied. If there exists any basis which supports the ruling of the trial court, affirmance of a summary judgment is proper."

*Millard v. City of Sioux Falls*, 1999 SD 18, ¶ 8, 589 N.W.2d 217, 218 (quoting *Walther v. KPKA Meadowlands Ltd. Partnership*, 1998 SD 78, ¶ 14, 581 N.W.2d 527, 531 (citations omitted)).

### DECISION

[¶ 13.] **1. Genuine issues of material fact exist so as to preclude granting a partial summary judgment on the fraud claim.**

[¶ 14.] The trial court's three-page memorandum opinion on the motion for partial summary judgment only briefly addressed the fraud claim. Specifically, in discussing whether Brevet had satisfied the test for piercing the corporate veil, the trial judge summarily stated: "The plaintiff has been unable to point to anything arising to the level of fraud, injustice or inequitable consequences." This statement comprised the only mention of fraud in relation to the partial summary judgment.

[¶ 15.] Brevet argues, however, that genuine issues of material fact exist which would support submission of the fraud claim to the jury. We agree. Both par-

---

1.  SDCL 15–6–54(b) provides:
    When multiple claims for relief or multiple parties are involved in an action, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

ties make assertions of fact, grounded on a reasonable premise and arguably supported by the record.

[¶ 16.] " 'Questions of fraud ... are generally questions of fact and as such are to be determined by the jury.' " *Sporleder v. Van Liere,* 1997 SD 110, ¶ 13, 569 N.W.2d 8, 11 (quoting *Moss v. Guttormson,* 1996 SD 76, ¶ 7, 551 N.W.2d 14, 16 (citations omitted)); *see also Chamberlain Livestock Auction, Inc. v. Penner,* 462 N.W.2d 479, 481 (S.D.1990) (stating the fact finder determines the existence of fraud). Moreover, " 'we have repeatedly held that fraud is never presumed nor lightly inferred and that the burden of establishing fraud rests on the party who seeks to rely on it for affirmative relief.' " *Smith v. Hermsen,* 1997 SD 138, ¶ 16, 572 N.W.2d 835, 840 (quoting *Sander v. Wright,* 394 N.W.2d 896, 901 (S.D.1986) (Fosheim, J., concurring in result) (citations omitted)).

[¶ 17.] Although Great Plains relies on *Brandriet v. Norwest Bank,* 499 N.W.2d 613 (S.D.1993), for its definition of fraud, this Court must look to the definitions of actual and constructive fraud as set forth in SDCL ch. 53–4 when determining whether partial summary judgment on the issue of contractual fraud is appropriate. *McDonough v. Kahle,* 1999 SD 14, ¶ 17, 588 N.W.2d 600, 603; *Sperry Corp. v. Schaeffer,* 394 N.W.2d 727, 731 (S.D.1986) (Wuest, C.J., concurring specially). SDCL 53–4–5 defines actual fraud as follows:

Actual fraud in relation to contracts consists of any of the following acts committed by a party to the contract, or with his connivance, with intent to deceive another party thereto or to induce him to enter into the contract:

(1) The suggestion as a fact of that which is not true by one who does not believe it to be true;

(2) The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believe it to be true;

(3) The suppression of that which is true by one having knowledge or belief of the fact;

(4) A promise made without any intention of performing it; or

(5) Any other act fitted to deceive.

Actual fraud is always a question of fact.

[¶ 18.] SDCL 53–4–6 provides the following definition of constructive fraud:

Constructive fraud consists:

(1) In any breach of duty which, without any actually fraudulent intent, gains an advantage to the person in fault or anyone claiming under him, by misleading another to his prejudice or to the prejudice of anyone claiming under him; or

(2) In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud.

[¶ 19.] Here, when the evidence is viewed in a light most favorable to Brevet, a trial court could have found that genuine issues of material fact exist, especially as to subparts (1), (2), and (4) of SDCL 53–4–5. First, Brevet asserts that Crosby made a false representation in their initial negotiations that Great Plains had $500,000 in sales orders it could fill if the plant was made to operate more efficiently; Great Plains claims the statement was true. Both parties offer evidence to support their positions. Alternately, Crosby argues that even if the statement was not true, he believed it to be true. According to SDCL 53–4–5(2), however, a statement may still constitute fraud if the declarant does not have sufficient information to support his statement, even though he believes his statement is true at the time it is made. Additionally, Brevet argues that Great Plains never intended to pay for its services; Great Plains responds that it intended to pay, but it refused to pay because Brevet did not succeed in resolving Great Plains' manufacturing problems. Both parties offer evidence to substantiate their claims.

[¶ 20.] We find the evidence in the record sufficient to raise genuine issues of material fact as to fraud under SDCL 53–4–5. Thus, the claim cannot be properly disposed of by summary judgment. As SDCL 53–4–5 states: "Actual fraud is always a question of fact." Our decision on this issue is especially befitting in light of the fact that allegations of fraud will likely arise again in Great Plains' counterclaim against Brevet.

[¶ 21.] **2. The trial court properly refused to pierce the corporate veil and hold the individual defendants personally liable.**

[¶ 22.] In granting the defendants' motion for partial summary judgment, the trial court found that although there were some irregularities in the record keeping of the company, Great Plains was a lawfully formed corporation under the laws of the State of South Dakota. Notwithstanding some undisputed problems in formalities, the trial court held the failure to observe corporate rules did not reach the level of the first prong of the test for piercing the corporate veil as found in *Kansas Gas & Electric Co. v. Ross*, 521 N.W.2d 107 (S.D.1994).

[¶ 23.] Brevet first contends that the management consulting contract was entered into with the individual defendants, not the corporation. Alternatively, it argues that if Great Plains was a valid corporation, then the corporate veil should be pierced and the individual defendants should be held personally liable. In contrast, Great Plains and the individual defendants assert the trial court's summary judgment on the personal liability claim was proper. We agree.

[¶ 24.] We only briefly address Brevet's first argument that the contract was entered into with Crosby, Coward and Krutsch individually, rather than with Great Plains as a corporation. This claim is totally contradictory to the evidence in the record. In particular, invoices sent by Brevet were addressed to "Chris Crosby, The Great Plains Luggage Company." Moreover, the invoices were paid by corporate check, not personal checks, without objection by Brevet. An experienced businessman like MacKintosh[2] would surely know that contracting with "Great Plains Luggage Company" is not the same as contracting with Crosby, Coward and Krutsch on an individual basis. Finally, the name "Great Plains Luggage Company" meets the statutory requirements for identification of a corporate entity.[3] If Brevet had any doubt as to the form of the business organization with which he was dealing, he need only have contacted the secretary of state's office for verification of corporate status.

[¶ 25.] We have long recognized that, as a general rule, a corporation is to be considered a legal entity separate and distinct from its shareholders, officers and directors unless and until there is sufficient reason to the contrary. *Kansas Gas*, 521 N.W.2d at 111. *See also Mobridge Community Industries, Inc., v. Toure, Ltd.*, 273 N.W.2d 128, 132 (S.D.1978); *Farmers Feed & Seed, Inc., v. Magnum Enterprises, Inc.*, 344 N.W.2d 699, 702 (S.D.1984); *Ethan Dairy Products v. Aus-*

---

2. MacKintosh certainly gave the impression in his deposition that he is an experienced businessman. After embarking upon a lexicological discussion of the word "corporation," he conversed about annual board meetings, corporate registers, joint ownership of stock, raiding a corporation, and the difference between a publicly held and a closely held corporation. His familiarity with basic forms of business ownership can also be inferred by virtue of his position as a management consultant with Brevet since 1972.

3. SDCL 47–2–36 states:

In order to protect the public against confusion between corporations and to guard against unfair competition, the name of any corporation except a nonprofit corporation shall contain the word "corporation," "company," "incorporated," or "limited," or shall contain an abbreviation of one of such words.

*tin,* 448 N.W.2d 226, 230 (S.D.1989); *Baatz v. Arrow Bar,* 452 N.W.2d 138, 141 (S.D. 1990). The concept of limited liability is considered one of the central purposes for choosing the corporate form, because it permits shareholders to limit their personal liability to the extent of their investment. *Kansas Gas,* 521 N.W.2d at 111 (citations omitted). A corporation is looked upon as a distinct entity, but when the notion of a separate legal existence is used to "defeat public convenience, justify wrong, protect fraud, or defend crime, then sufficient reason will exist to pierce the corporate veil." *Id.* at 112 (citations omitted). Decisions about whether to pierce the corporate veil must be decided in accordance with the unique, underlying facts of each case. *Id.*

[¶ 26.] In *Kansas Gas,* we enumerated six factors to consider when determining whether equity demands piercing the corporate veil. Those factors include: (1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; (5) fraudulent misrepresentation by corporate directors; and (6) use of the corporation to promote fraud, injustice or illegality. *Kansas Gas,* 521 N.W.2d at 112 n. 6. The six factors can be grouped into two separate prongs: the "separate corporate identity" prong and the "fraud or inequitable consequences" prong. *Id.* at 112. If the four factors under the "separate corporate identity" prong are present in sufficient number and/or degree, then this Court will consider the two factors under the "fraud or inequitable consequences" prong. *Id.* at 113. "[A] court should pierce the corporate veil only upon the strongest evidence of these factors." *Id.* at 113 n. 9; *Farmers Feed & Seed,* 344 N.W.2d at 702; *Ethan Dairy Products,* 448 N.W.2d at 230.

[¶ 27.] *Kansas Gas* controls. Applying those factors to these facts, we conclude the trial court did not err. Brevet has not met its burden of showing why the corporate veil should be pierced.

[¶ 28.] For all the reasons stated above, we reverse the trial court's summary judgment as it relates to the fraud claim and affirm as it relates to the personal liability of the individual defendants.

[¶ 29.] SABERS, AMUNDSON, KONENKAMP, and GILBERTSON, Justices, concur.