#29957, #29974-aff in pt & rev in pt-SPM
**2023 S.D. 56**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

LINDA PAUL,                                          Plaintiff and Appellant,

    v.

ROBERT BATHURST and
SHANNON BATHURST, d/b/a
WAYBACK STONEMEADOW
RANCH and STONEMEADOW
RANCH, LLC,                                          Defendants and Appellees.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SEVENTH JUDICIAL CIRCUIT
CUSTER COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE JOSHUA HENDRICKSON
Judge

\* \* \* \*

CRAIG O. ASH
Milbank, South Dakota                       Attorney for plaintiff
                                            and appellant.


KASSIE MCKIE SHIFFERMILLER of
Lynn Jackson Shultz & Lebrun, P.C.
Rapid City, South Dakota                    Attorneys for defendant and
                                            appellee Robert Bathurst.

\* \* \* \*

CONSIDERED ON BRIEFS
NOVEMBER 8, 2022
OPINION FILED **11/01/23**

* * * *

SARAH E. BARON HOUY of
Bangs, McCullen, Butler,
   Foye & Simmons, LLP
Rapid City, South Dakota

                                  Attorneys for defendant and
                                  Appellee Shannon Bathurst.

#29957, #29974

MYREN, Justice

[¶1.]        Linda Paul sued Robert Bathurst, Shannon Bathurst, and Stonemeadow Ranch, LLC, alleging breach of contract, quantum meruit, unjust enrichment, and promissory estoppel.  Robert and Shannon filed a motion to dismiss for failure to state a claim upon which relief can be granted or because a statute of limitations barred Paul from bringing her claim.  The circuit court denied the motion to dismiss for failure to state a claim upon which relief can be granted but granted the motion to dismiss based on a statute of limitations.  Paul appeals the order granting the motion to dismiss.  Robert and Shannon filed a notice of review on the order denying the motion to dismiss.[1]  We affirm in part and reverse in part.

## Facts Alleged in the Complaint

[¶2.]        When reviewing orders on a motion to dismiss, this Court accepts the facts alleged in the complaint as true and construes them in the light most favorable to the pleader.  *Sisney v. Best Inc.*, 2008 S.D. 70, ¶ 8, 754 N.W.2d 804, 809.  Paul's complaint asserts four causes of action: (1) breach of contract, (2) quantum meruit, (3) unjust enrichment, and (4) promissory estoppel.  Each claim seeks precisely $179,058.51.

---

1.       The denial of a grant of a motion to dismiss is not a final order subject to appeal under SDCL 15-26A-3.  However, SDCL 15-26A-22 provides: "An appellee may obtain review of a judgment or order entered in the same action which may adversely affect him by filing a notice of review[.]"  This Court has previously addressed a denial of a motion to dismiss raised by notice of review.  *See Guthmiller v. Deloitte & Touche, LLP*, 2005 S.D. 77, 699 N.W.2d 493.

-1-

[¶3.]        Paul alleged the following in her complaint.  Robert and Shannon "owned and operated a ranch in Custer County, South Dakota, consisting of a caretaker's residence, a hunting lodge, a shop, and approximately 730 acres of ranchland[.]"  In October 2014, Robert and Shannon "contracted with [Paul] for [Paul] to provide certain labor, materials and expenses for various improvements and repairs at the Ranch."  These improvement tasks included "cleaning, painting, minor repairs, flooring, organization and generally bring[ing] the property into good condition and repair[.]"  In exchange, Robert and Shannon would pay Paul at her "customary rate plus materials and expenses."  "The overall purpose of [Paul's] services were to get the Ranch back into good condition for the purpose of getting the property ready for sale[.]"  In July 2015, Robert and Shannon "terminated their existing ranch managers, and put [Paul] in charge of managing the ranch."  Robert and Shannon approved hiring a ranch hand.  Paul "advanced the first payment to Mr. Grady [ranch hand] in the amount of $1,500.00 for his first one and a half pay periods and [Robert and Shannon] agreed to reimburse [Paul] for this expense, but have not yet done so."

[¶4.]        Around April 2016, Robert and Shannon "entered into an agreement with [Paul] whereby [Robert and Shannon] agreed to pay [Paul] the same amount of $1,000.00 every two weeks to manage the Ranch, and to reimburse [Paul] for expenses incurred on behalf of [Robert and Shannon]."  This second agreement lasted "from April 2016 until October 2017, during which time [Paul] was owed a total of $40,000.00 for her regular bi-weekly compensation."  Only a portion of this amount was paid, "leaving a balance owed to [Paul] in the amount of $17,500.00."

"In the courses of providing services to [Robert and Shannon], [Paul] advanced money for materials, supplies and expenses for the Ranch on behalf of [Robert and Shannon] in the unreimbursed amount of $20,360.80." "In the course of providing services to [Robert and Shannon], [Paul] utilized her own vehicle for Ranch purposes causing damages in the amount of $2,091.71, for which [Paul] is entitled to reimbursement." "As additional compensation, [Robert and Shannon] agreed to provide [Paul] with [a] trip to Ireland for two people having a value of $5,876.00, which has not been provided to [Paul]." For the first contract—from October 2014 to April 2016—Robert and Shannon owed Paul $133,230.00, which was calculated "at [Paul's] usual and customary rate[.]"

[¶5.]         During the entire working relationship Paul had with Robert and Shannon, she "dealt directly with [Robert and Shannon] with no mention of Stonemeadow Ranch, LLC." "All payments to [Paul] for compensation or expense reimbursement came either from an account entitled 'Robert M. Bathurst MD' or 'Robert M. Bathurst' or 'Robert M. Bathurst DBA Wayback* Stonemeadow Ranch[.]' None of these accounts reference a limited liability company." However, Paul did receive "a 1099 for non-employee compensation from Stonemeadow Ranch, LLC in the spring of 2017, and another 1099 from Stonemeadow Ranch, LLC in the spring of 2018." Paul "did not receive any payments or reimbursements from Stonemeadow Ranch, LLC, and [Paul] was unaware she had any business dealings with Stonemeadow Ranch, LLC as a separate and distinct entity from [Robert and Shannon]."

[¶6.] "To the extent that [Robert and Shannon] may claim that [Paul] contracted with Stonemeadow Ranch, LLC, [Paul] alleges that [Stonemeadow Ranch, LLC] is the alter ego of [Robert and Shannon] and that the entity should be disregarded." Robert and Shannon "are the sole members and owners of Stonemeadow Ranch, LLC, and that there exists . . . a complete unity of interest between [Robert and Shannon] and [Stonemeadow Ranch, LLC]." Paul "alleges that [Stonemeadow Ranch, LLC] is and was at all times mentioned . . . a mere shell, instrumentality and conduit through which [Robert and Shannon] carried on their business in the name of [Stonemeadow Ranch, LLC] to such extent that any individuality or separateness of [Stonemeadow Ranch, LLC] and [Robert and Shannon] does not at any time mentioned . . . exist." Paul "alleges that [Stonemeadow Ranch, LLC] . . . was controlled, dominated and operated by [Robert and Shannon] as their individual business alter ego in that the business activities and business of the LLC were carried out in the individual names of [Robert and Shannon]." Paul "alleges that adherence to the fiction of the separate existence of [Stonemeadow Ranch, LLC] as an entity separate and distinct from [Robert and Shannon] would permit abuse of the corporate privilege and produce an inequitable result in that [Robert and Shannon] represented to [Paul] that [Robert and Shannon] were parties obligated in dealings with [Paul]." Paul "alleges that [Stonemeadow Ranch, LLC] was greatly undercapitalized in that [Robert and Shannon] were required to pay the majority of the [Stonemeadow Ranch, LLC] expenses personally out of personal bank accounts. This being the case, [Paul] believes [Stonemeadow Ranch, LLC] may have insufficient assets to cover its

obligations to [Paul]." Paul "alleges that she contracted with and provided services to [Robert and Shannon]. To the extent that [Robert and Shannon] may be successful in substituting [Stonemeadow Ranch, LLC] as the obligated party in this action, then such claims are alleged to be against all named Defendants."

[¶7.]        Paul's breach of contract claim seeks damages resulting both from the first alleged contract (from October 2014 to April 2016) and the second alleged contract (from April 2016 to October 2017). It also seeks reimbursement for: (1) the Ireland trip; (2) the deterioration of Paul's vehicle; (3) the advance wages to the hired man, and (4) materials, supplies, and expenses. For the implied contract claim (quantum meruit), Paul seeks "the reasonable value of her labor, materials, supplies and expenses[.]" For the promissory estoppel claim, Paul claims that she "conferred a benefit on [Robert and Shannon]" based upon their "promise[s] on several occasions to fully and adequately compensate [Paul] for her labor, materials, supplies and expenses." "In reliance on [Robert and Shannon's] promise to fully compensate [Paul], [Paul] continued to provide labor, materials, supplies and expenses to [Robert and Shannon] to her detriment in the amount of the value of the labor, materials, supplies and expenses." Paul asserts this reliance was reasonable, and Paul's loss of pecuniary gain was foreseeable to Robert and Shannon.

## Procedural History

[¶8.]        Robert and Shannon filed separate answers denying Paul's claims and asserting various affirmative defenses. Simultaneously, Robert filed a motion to

dismiss that alleged failure to state a claim upon which relief can be granted[2] or, in the alternative, that Paul's claims were time-barred by the statute of limitations in SDCL 15-2-15(4). Shannon joined Robert's motion to dismiss.

[¶9.] Counsel for Paul, Robert, and Shannon argued the motion to dismiss before the circuit court at a hearing held for that purpose. After hearing the arguments, the circuit court issued a brief bench ruling. First, it denied the motion to dismiss for failure to state a claim upon which relief can be granted because "there's been pled with enough facts that would make that an issue potentially for piercing a corporate veil." Second, the circuit court granted the motion to dismiss based on the two-year statute of limitations because "wages being a pretty broad definition, at least I am applying a broad definition to it, I do believe that what's been alleged could fall under that. So I'm applying the two-year statute of limitations on it and would grant the motion to dismiss based on the alternative argument of the statute of limitations." Subsequently, the circuit court issued two orders effectuating those rulings. Paul appealed the order dismissing her claims

_____

2.      SDCL 15-6-12(b) provides:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion:
>
> (1) Lack of jurisdiction over the subject matter;
> (2) Lack of jurisdiction over the person;
> (3) Insufficiency of process;
> (4) Insufficiency of service of process;
> (5) Failure to state a claim upon which relief can be granted;
> (6) Failure to join a party under § 15-6-19.

based on the statute of limitations. Robert and Shannon filed a joint notice of review, seeking review of the order denying the motion to dismiss for failure to state a claim upon which relief can be granted.

**Standard of Review**

[¶10.]    "[W]hether [a] complaint failed to state a claim upon which relief could be granted . . . is a question of law we review de novo." *Nooney v. StubHub, Inc.*, 2015 S.D. 102, ¶ 9, 873 N.W.2d 497, 499 (citing *Wells Fargo Bank, N.A. v. Fonder*, 2015 S.D. 66, ¶ 6, 868 N.W.2d 409, 412).

[¶11.]    A review of our prior decisional law reveals that statute of limitations defenses typically are not resolved through a motion to dismiss but rather by a factfinder or through the summary judgment process. *See Strassburg v. Citizens State Bank*, 1998 S.D. 72, ¶ 7, 581 N.W.2d 510, 513 (citing *Greene v. Morgan, Theeler, Cogley & Petersen*, 1998 S.D. 16, ¶ 6, 575 N.W.2d 457, 459, *abrogated on other grounds by Robinson-Podoll v. Harmelink, Fox & Ravnsborg Law Office*, 2020 S.D. 5, ¶ 22, 939 N.W.2d 32, 41) ("Because the point at which a period of limitations begins to run must be decided from the facts of each case, statute of limitations questions are normally left for a jury."). "A motion to dismiss under SDCL 15-6-12(b) tests the legal sufficiency of the pleading, not the facts which support it. For purposes of the pleading, the court must treat as true all facts properly pled in the complaint and resolve all doubts in favor of the pleader." *N. Am. Truck & Trailer, Inc. v. M.C.I. Commc'n Servs., Inc.*, 2008 S.D. 45, ¶ 6, 751 N.W.2d 710, 712 (quoting *Nygaard v. Sioux Valley Hosps. & Health Sys.*, 2007 S.D. 34, ¶ 9, 731 N.W.2d 184, 190). Accordingly, in these circumstances where the circuit court's resolution of the

statute of limitations issue is purely grounded in applying the applicable law to presumed facts, we apply a de novo standard of review.

## Decision

### 1. Whether the circuit court erred when it dismissed all of Paul's claims based on the application of the statute of limitations in SDCL 15-2-15(4).

[¶12.]    Paul claims the six-year statute of limitations established in SDCL 15-2-13(1)[3] applies to her claims because they are based on contract, obligation, or liability. Robert and Shannon note that SDCL 15-2-13(1) contains several exceptions to the six-year limitations period. One of the exceptions, contained in SDCL 15-2-15(4),[4] gives only two years to bring a suit when the action is for "wages or for a liability or penalty for failure to pay wages in accordance with the

---

3.    SDCL 15-2-13(1) provides, in pertinent part:

> Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within six years after the cause of action shall have accrued:
>
> > (1) An action upon a contract, obligation, or liability, express or implied, excepting those mentioned in §§ 15-2-6 to 15-2-8, inclusive, and subdivisions 15-2-15(3) and (4);

4.    SDCL 15-2-15(4) provides, in pertinent part:

> Except where, in special cases, a different limitation is prescribed by statute, the following civil actions other than for the recovery of real property can be commenced only within two years after the cause of action shall have accrued:
>
> > . . . .
> > (4) An action for wages or for a liability or penalty for failure to pay wages in accordance with the provisions of any contract or statute.

provisions of any contract or statute." The circuit court dismissed *all* of Paul's claims against Robert and Shannon, implicitly determining that all her claims were for "wages" under SDCL 15-2-15(4).

[¶13.]     Questions of statutory interpretation are reviewed de novo. *State v. Thoman*, 2021 S.D. 10, ¶ 17, 955 N.W.2d 759, 766 (citing *Reck v. S.D. Bd. of Pardons & Paroles*, 2019 S.D. 42, ¶ 8, 932 N.W.2d 135, 138). "'In conducting statutory interpretation, we give words their plain meaning and effect, and read statutes as a whole.' '[I]f the words and phrases in the statute have plain meaning and effect, we should simply declare their meaning and not resort to statutory construction.'" *Id.* ¶ 17, 955 N.W.2d at 767 (alteration in original) (citation omitted) (quoting *Reck*, 2019 S.D. 42, ¶ 11, 932 N.W.2d at 139).

[¶14.]     Paul has not alleged that Robert and Shannon ever employed her or that any of her claims for services are wages. Instead, Paul argues that she was an independent contractor while providing services to Robert and Shannon, and as such, her claims are not for wages within the meaning of the two-year statute of limitations in SDCL 15-2-15(4). Robert and Shannon argue that it is immaterial whether Paul was an independent contractor, and the application of the two-year statute of limitations in SDCL 15-2-15(4) "hinges on the definition of 'wages' within the meaning" of the statute.[5]

---

5.     Robert and Shannon cite *Bell v. Midland Nat. Life Ins. Co.*, 78 S.D. 349, 102 N.W.2d 322 (1960), and *In re Swanson's Est.*, 73 S.D. 293, 42 N.W.2d 228 (1950), in support of their claim that the resolution of the issue comes down to the definition of "wages." But in both of those cases the plaintiffs were employees. *See Bell*, 78 S.D. at 351, 102 N.W.2d at 323 ("Bell was originally employed as actuary of defendant in 1921 and also served as director, vice

(continued . . .)

[¶15.]     If Paul acted as an independent contractor providing services to Robert and Shannon, the two-year limitation period in SDCL 15-2-15(4) is inapplicable. This Court has never held that amounts due for services provided by an independent contractor are wages under the two-year statute of limitations in SDCL 15-2-15(4). Such a holding would treat contract claims for services by plumbers, electricians, lawyers, and other independent contractors as claims for wages subject to a two-year limitation period. Such a determination would also contradict the common definition of "wages" and the Legislature's treatment of the term "wages" within other South Dakota statutes.

[¶16.]     Black's Law Dictionary defines "wages" as "[p]ayment for labor or services, usu[ally] based on time worked or quantity produced; *specif[ically], compensation of an employee* based on time worked or output of production." (Emphasis added.) It further provides that "[w]ages include [essentially any compensation for services] *received from the employer*." (Emphasis added.)

[¶17.]     The only statutory definition of "wages" is found in SDCL 61-1-1(17), within the context of the Reemployment Assistance program in SDCL Title 61.[6] Those provisions also apply the term "wages" to an employer/employee relationship.

---

(. . . continued)

president and later president continuously until March 1, 1947[.]"); *In re Swanson's Est.*, 73 S.D. at 297, 42 N.W.2d at 230 (Plaintiff argued "that where services are continuously rendered over an extended period of time . . . the *employee's* right of action accrues and the statute of limitations begins to run when, and only when, the services are fully performed or the employment otherwise terminated." (emphasis added)). There was no claim that the plaintiff in either case was an independent contractor.

6.     This section defines "wages" as "all remuneration paid for services, including commissions and bonuses."

*See* SDCL 61-1-11 (distinguishing employees and independent contractors). Similarly, South Dakota's wage claim provisions, such as minimum wage requirements and broader statutory wage protections for a breach of an obligation to pay wages and collection of unpaid wages, are applied only in the employment context. *See* SDCL chapter 60-11. These provisions are specifically for the benefit of "employees" and imposed upon "employers" as defined in SDCL 60-11-8. Nothing within SDCL chapter 60-11, or any other statutory provision, suggests that the Legislature intended the term "wages" within SDCL 15-2-15(4) to include claims for services rendered by an independent contractor.

[¶18.] Determining which statute of limitation applies requires accurately determining the nature of the contractual relationship between these parties. In this case, the record does not allow such a determination at this early stage of the proceedings. We reverse the order dismissing all of Paul's claims and remand for the circuit court to determine whether Paul acted as an independent contractor or employee when providing services to Robert and Shannon. If she was an independent contractor, her claims are governed by the six-year contract statute of limitations in SDCL 15-2-13(1). If she was an employee, the two-year statute of limitation in SDCL 15-2-15(4) applies to any of her wage claims. However, it would not apply to other claims that did not constitute wages, such as claims for reimbursement.

### 2. Whether the circuit court erred when it denied Robert and Shannon's motion to dismiss for failure to state a claim.

[¶19.]       By notice of review, Robert and Shannon assert the circuit court erred when it denied their motion to dismiss Paul's claims for failure to state a claim upon which relief can be granted.

> A complaint need only contain a short plain statement of the claim showing the pleader is entitled to relief and a demand for judgment for the relief to which the pleader deems himself entitled. Although a complaint need not have detailed factual allegations, it must contain more than labels and conclusions and a formulaic recitation of the elements of a cause of action. "The rules 'contemplate a statement of circumstances, occurrences and events in support of the claim presented.'"

*Nooney*, 2015 S.D. 102, ¶ 9, 873 N.W.2d at 499 (citations omitted) (quoting *Gruhlke v. Sioux Empire Fed. Credit Union, Inc.*, 2008 S.D. 89, ¶ 17, 756 N.W.2d 399, 408–09).

[¶20.]       Paul asserted claims for breach of contract, unjust enrichment, implied contract, or promissory estoppel. Robert and Shannon do not challenge the sufficiency of the pleading of those claims. Instead, they argue that Paul's claims are against Stonemeadow Ranch, LLC, not against them as individuals. Second, they assert they cannot be held individually responsible for the obligations of Stonemeadow Ranch, LLC, because Paul has not adequately pled grounds to justify a disregard of that corporate entity.

[¶21.]       "Decisions about whether to pierce the corporate veil must be decided in accordance with the unique, underlying facts of each case." *Brevet Int'l, Inc. v. Great Plains Luggage Co.*, 2000 S.D. 5, ¶ 25, 604 N.W.2d 268, 274. There are six factors to consider when determining whether equity demands a disregard of the

corporate entity: "(1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; (5) fraudulent misrepresentation by corporate directors; and (6) use of the corporation to promote fraud, injustice or illegality" *Id.* ¶ 26, 604 N.W.2d at 274. "The six factors can be grouped into two separate prongs: the 'separate corporate identity' prong and the 'fraud or inequitable consequences' prong. If the four factors under the 'separate corporate identity' prong are present in sufficient number and/or degree, then this Court will consider the two factors under the 'fraud or inequitable consequences' prong." *Id.* (citing *Kan. Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 113 (S.D. 1994)).

[¶22.] Paul's complaint asserts individual claims against Robert and Shannon. Recognizing that Robert and Shannon would attempt to shift responsibility to the LLC, Paul's complaint also clearly asserts a claim for disregard of that corporate entity. Paul asserts several factors are present here: the LLC is undercapitalized, the LLC is the alter ego of Robert and Shannon, there is a complete unity of interest between the LLC and Robert and Shannon, Robert and Shannon failed to observe corporate formalities in that they did not operate the LLC as a distinct entity; all the payments they made to her came from their personal accounts and not the LLC; Robert and Shannon represented to Paul that they were the obligated parties when dealing with her; and to allow them to assert "the fiction of the separate existence of" an LLC which may have insufficient assets to cover these obligations "would permit abuse of the corporate privilege and produce an inequitable result." Together, these assertions create a "short and plain statement

of the claim showing that the pleader is entitled to relief[.]" *Kaiser Trucking, Inc. v. Liberty Mut. Fire Ins. Co.*, 2022 S.D. 64, ¶ 30, 981 N.W.2d 645, 656 (alteration in original) (quoting *St. Pierre v. State ex rel. S.D. Real Est. Comm'n*, 2012 S.D. 25, ¶ 17, 813 N.W.2d 151, 157).  The circuit court did not err when it denied the motion to dismiss for failure to state a claim upon which relief could be granted.  We affirm the denial of the motion to dismiss.

[¶23.]      JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.