#30348-aff in pt & rev in pt-SPM
**2024 S.D. 42**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

FDJ, LLC, a South Dakota Limited
Liability Company, RICHARD FLUGGE
and LEANN JULIUS,                                    Plaintiffs and Appellants,

v.

ROSS DETERMAN,                                    Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

THE HONORABLE DOUGLAS E. HOFFMAN
Judge

\* \* \* \*

PATRICK J. GLOVER of
Meierhenry Sargent LLP
Sioux Falls, South Dakota                         Attorneys for plaintiffs
                                                   and appellants.


JAMES D. TAYLOR
Mitchell, South Dakota                            Attorney for defendant and
                                                   appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
MARCH 19, 2024
OPINION FILED **07/24/24**

#30348

MYREN, Justice

[¶1.]    FDJ, LLC (the LLC), Richard Flugge, and LeAnn Julius (collectively Plaintiffs) appeal from the circuit court's judgment following a court trial. Plaintiffs sued Ross Determan, alleging a breach of his covenant not to compete. Determan counterclaimed for breach of contract based on the LLC's alleged failure to make payments due under their purchase agreement. The circuit court concluded the LLC breached their purchase agreement by failing to make payments due, which relieved Determan of his obligations under the covenant not to compete. The circuit court awarded Determan damages of $106,972.36, concluding that Plaintiffs were jointly and severally liable for such damages. We affirm the judgment against the LLC but reverse the imposition of judgment against Flugge and Julius individually.

### Factual and Procedural History

[¶2.]    Ross Determan sold his Mitchell, South Dakota, accounting practice to Flugge and Julius, who intended to expand the business to Sioux Falls, South Dakota. The three entered into a Purchase Agreement and Partnership Agreement dated December 11, 2017.

[¶3.]    The Purchase Agreement required that the parties form a limited liability company. FDJ, LLC, was created, and the parties entered into an Operating Agreement on December 31, 2017. Paragraph 3 of the Purchase Agreement required the LLC to pay Determan a percentage (which varied from 9% to 18%) of the LLC's collections, which was due each month for six years. Determan agreed to stay on as an employee at $50 per hour during the transition of the business to Flugge and Julius. The Purchase Agreement also contained a covenant

-1-

not to compete under which Determan agreed that "during the course of this Agreement and for a period of twenty-four (24) months immediately following expiration or termination of this Agreement, Determan will not competed [sic] with the [sic] Flugge, Julius and/or the LLC."

[¶4.]     Within a year of the sale, several problems arose, including late payments from the LLC to Determan.  Determan testified that the last payment he received from the sale of the business was in May 2018.

[¶5.]     Determan resigned as an employee and withdrew as a member of the LLC.  Determan, Flugge, and Julius executed a Statement & Notice of Dissociation of Flugge, Determan & Julius, LLC, which set forth October 31, 2018, as the effective date of Determan's dissociation.  The parties agreed that the provisions of the Purchase Agreement relating to the LLC's obligation to make payments to Determan survived Determan's dissociation.  They also agreed Determan's covenant not to compete would survive his dissociation.

[¶6.]     Beginning in about November 2018, Determan began performing accounting work for some of his former clients, many of whom reached out to him when Plaintiffs failed to assist them.  In March 2019, Determan, through counsel, notified the LLC that he believed the LLC was "in breach of its contractual obligations" because Determan had not received payments due from the LLC.  That letter also informed Plaintiffs of Determan's intent to assist the LLC's former clients, partly to minimize losses.

[¶7.]     Plaintiffs sued Determan, alleging breach of contract for Determan's alleged violation of the covenant not to compete.[1]  Determan counterclaimed for breach of contract, alleging the LLC failed to make the required payments for the purchase of the business.  Determan's counterclaim did not allege joint and several liability or that the corporate entity should be disregarded.

[¶8.]     Following a court trial, the circuit court found that the LLC breached the Purchase Agreement by failing to account for, properly calculate, and remit the appropriate and proper percentage of receipts to Determan and by intentionally refusing to make any payments to him after January 15, 2019.  The circuit court concluded the LLC's breach of contract voided the covenant not to compete.  The circuit court determined Determan was owed $106,972.36 and imposed liability for that amount on the LLC, Flugge, and Julius, jointly and severally.

[¶9.]     Plaintiffs appeal, claiming the circuit court's findings of fact and conclusions of law are inconsistent with the trial testimony, and the circuit court erred in concluding the LLC breached the Purchase Agreement first.  Plaintiffs claim the circuit court should have entered judgment in their favor on their breach of contract claim and entered judgment against Determan on his breach of contract

---

1.     In their brief, Plaintiffs argue Determan "was first to breach of [sic] the Operating Agreement by his voluntarily [sic] dissociation."  The amended complaint alleges just one breach by Determan—breach of the Purchase Agreement "by violating the covenant not to compete."  The case was tried on the theory that Determan breached the covenant not to compete, not that he breached the Operating Agreement.  We will not consider the argument that Determan breached the Operating Agreement by his withdrawal, as this theory was not previously advanced and not considered by the circuit court.  *See Kansas Gas & Elec. Co. v. Ross*, 521 N.W.2d 107, 116 (S.D. 1994) ("We will not consider an argument raised for the first time on appeal.").

claim. Plaintiffs also argue any judgment should be against the LLC alone and not against Flugge and Julius personally.

## Analysis and Decision

> **1. Whether the circuit court was clearly erroneous when it determined that the LLC breached the Purchase Agreement first.**

[¶10.] "Conclusions of law are reviewed under a de novo standard of review and no deference is given to the trial court's conclusions of law." *Melstad v. Kovac*, 2006 S.D. 92, ¶ 6, 723 N.W.2d 699, 702. "Factual findings are examined under the clearly erroneous standard." *Eagle Ridge Ests. Homeowners Ass'n v. Anderson*, 2013 S.D. 21, ¶ 12, 827 N.W.2d 859, 864.

[¶11.] "[T]he credibility of the witnesses, the import to be accorded their testimony, and the weight of the evidence must be determined by the trial court, and we give due regard to the trial court's opportunity to observe the witnesses and examine the evidence." *Id.* (alteration in original) (citation omitted). "Doubts about whether the evidence supports the court's findings of fact are to be resolved in favor of the successful party's 'version of the evidence and of all inferences fairly deducible therefrom which are favorable to the court's action.'" *Osman v. Karlen & Assocs.*, 2008 S.D. 16, ¶ 15, 746 N.W.2d 437, 443 (citations omitted).

[¶12.] "In applying the 'clearly erroneous' standard, we do not ask whether we would have made the same findings as did the trial court. Rather, the test is whether, after reviewing all the evidence, we are left with a definite and firm conviction that a mistake has been made." *Ducheneaux v. Miller*, 488 N.W.2d 902, 908 (S.D. 1992) (citation omitted). "[W]e are not free to retry the case as if it had

never been heard before." *Melstad*, 2006 S.D. 92, ¶ 6, 723 N.W.2d at 702 (alteration in original) (quoting *In re Guardianship and Conservatorship of A.L.T. & S.J.T.*, 2006 S.D. 28, ¶ 37, 712 N.W.2d 338, 347).

[¶13.]     "It is well established that a material breach of a contract excuses the non-breaching party from further performance." *FB & I Bldg. Prod., Inc. v. Superior Truss & Components*, 2007 S.D. 13, ¶ 15, 727 N.W.2d 474, 478–79 (citing *S & S Trucking v. Whitewood Motors, Inc.*, 346 N.W.2d 297, 301 (S.D. 1984) (other citations omitted)). *See also Krantz, Inc. v. Nissan N. Am., Inc.*, 408 F. Supp. 2d 854, 863 (D.S.D. 2005) ("Material breach provides one basis for excusing [the other party's] performance under the contract." (alteration in original) (citation omitted)); Restatement (Second) of Contracts § 237 (1981) ("it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time"). These principles apply with equal force to a contract containing a covenant not to compete. *See Parr v. Alderwoods Grp., Inc.*, 604 S.E.2d 431, 435 (Va. 2004); *Galesburg Clinic Ass'n v. West*, 706 N.E.2d 1035, 1036–37 (Ill. App. Ct. 1999) ("a breach of a partnership agreement can operate to discharge the duties of a covenant not to compete where the breach is material").

[¶14.]     "A 'material breach' is one that would 'defeat "the very object of the contract."'" *Icehouse, Inc. v. Geissler*, 2001 S.D. 134, ¶ 21, 636 N.W.2d 459, 465 (quoting *Thunderstik Lodge, Inc. v. Reuer*, 1998 S.D. 110, ¶ 25, 585 N.W.2d 819, 824). Whether a party's conduct is a material breach is a question of fact. *Id.*

Because a material breach by one party relieves the other party of its duties to perform under the contract, the crux of this case is which party materially breached the Purchase Agreement first.

[¶15.] Plaintiffs disagree with the circuit court's determination that the LLC breached the obligation to pay Determan as required by paragraph 3 of the Purchase Agreement before Determan allegedly breached the covenant not to compete. While the circuit court did not specify the date of the LLC's breach, evidence in the record supports the circuit court's finding that the LLC failed to make any payments for the purchase of the accounting business after May 2018. The circuit court found that Determan resumed working for previous clients six or seven months *after* the LLC's last payment to Determan.[2]

[¶16.] Plaintiffs contend that Determan testified that he was fully compensated in accordance with the Purchase Agreement until his breach. In his testimony, Determan acknowledged receipt of certain payments but asserted they were for reimbursement for equipment and bills he paid. More importantly, Determan testified these payments predated the date that the Plaintiffs' payments to him ceased.

[¶17.] Plaintiffs additionally asserted that Determan's payments were withheld to offset expenses that resulted from errors made by Determan. At trial,

---

2. Because the circuit court's finding that the LLC materially breached its obligations under the Purchase Agreement prior to Determan commencing any work for previous clients was not clearly erroneous, we need not address whether the services Determan provided to former clients constituted a material breach of the covenant not to compete. The LLC's material breach in failing to make payment relieved Determan of his obligations under the Purchase Agreement, including the covenant not to compete.

Determan disputed the validity of these claimed expenses and noted that Plaintiffs provided no documentation to establish that the claimed expenses had been paid. The circuit court found that Plaintiffs did not establish the validity of these claimed expenses. From our review of the record, this finding was not clearly erroneous.

[¶18.] The circuit court, acting as finder of fact, resolved any conflicts in the evidence by finding that the LLC breached its contractual obligation to pay Determan before his alleged violation of the covenant not to compete. Plaintiffs have not demonstrated these findings were clearly erroneous. The LLC's failure to make such payments was a material breach of the Purchase Agreement, relieving Determan from any further obligations under the Purchase Agreement.

### 2. Whether the circuit court erred when it entered judgment against Plaintiffs, jointly and severally.

[¶19.] The circuit court entered judgment "against Plaintiffs, jointly and severally, for all sums as set forth herein." Plaintiffs argue judgment should be against the LLC alone. Such a legal conclusion is reviewed de novo. *See Tri-City Assocs., L.P. v. Belmont, Inc.*, 2014 S.D. 23, ¶ 9, 845 N.W.2d 911, 915.

[¶20.] Whether the Purchase Agreement created joint or several liability for failure to pay Determan depends on the parties' intentions identified in that contract. *See MacArthur v. C.I.R.*, 168 F.2d 413, 415 (8th Cir. 1948) ("It is fundamental that whether a contract is severable or entire depends upon the intention of the parties at the time the contract was made."); *Spann v. Lovett & Co.*, 389 S.W.3d 77, 90 (Ark. Ct. App. 2012) ("Whether the liability of the promisors is joint depends upon the intention of the parties, ascertained from the contract by the ordinary rules of construction; in the absence of statute, the liability of two or more

promisors upon the same contract is a joint liability, if the rest of the contract does not show that a different liability was intended."); *Armstrong Airport Concessions v. K-Squared Rest., LLC*, 178 So. 3d 1094, 1103 (La. Ct. App. 2015) (the "'court's determination as to whether a contract is several or joint should be guided by "the rules for the interpretation of contracts"'" (quoting *City of Alexandria v. Brown*, 740 F.3d 339, 355 (5th Cir. 2014))); 17A Am. Jur. 2d Contracts § 407 ("Whether the liability of the promisors is joint depends upon the intention of the parties, ascertained from the contract by the ordinary rules of construction. That is, the question of what performances are promised is entirely a question of interpretation of the promises, and the court's determination as to whether a contract is several or joint should be guided by the rules for the interpretation of contracts.").

[¶21.]     The "proper interpretation of a contract must give effect to the intention of the contracting parties. This Court need only look to the language that the parties used in the contract to determine their intention. 'If that intention is clearly manifested by the language of the [agreement], it is the duty of this [C]ourt to declare and enforce it.'" *Ziegler Furniture & Funeral Home, Inc. v. Cicmanec*, 2006 S.D. 6, ¶ 16, 709 N.W.2d 350, 355 (alteration in original) (internal citation omitted) (quoting *In re Estate of Stevenson*, 2000 S.D. 24, ¶ 14, 605 N.W.2d 818, 821).

[¶22.]     Paragraph 3 of the Purchase Agreement provides:

> Determan will also receive compensation *from the LLC* for collections made each month. . . . The specific payments of collections shall be as follows:
>
> > (a) For the first calendar year, *the LLC* will pay Determan nine percent (9%) of collections each month;

> (b) For years two through five, *the LLC* will pay Determan eighteen percent (18%) of collections each month; and
>
> (c) For year six, *the LLC* will pay Determan nine percent (9%) of collections each month[.]

(Emphasis added.)

[¶23.]     The express language of the Purchase Agreement indicates the parties' intent that the LLC would be solely responsible for payments due to Determan. While each of them made specific promises in the Purchase Agreement, the LLC alone promised to make payments to Determan for the sale of his accounting business.[3] The LLC, Flugge, and Julius did not unite in a promise to pay Determan. The promise to pay Determan as outlined in the Purchase Agreement was not joint and several, but one to which only the LLC agreed.[4]

[¶24.]     SDCL 47-34A-303 also provides guidance on this issue:

---

3.   "Where all the parties *who unite in a promise* receive some benefit from the consideration, whether past or present, their *promise* is presumed to be joint and several." SDCL 53-2-4 (emphasis added). *See also* Restatement (Second) of Contracts § 289 (1981) ("Where two or more parties to a contract *promise the same performance* to the same promisee, each is bound for the whole performance thereof, whether his duty is joint, several, or joint and several." (emphasis added)); 12 Williston on Contracts § 36:1 (4th ed.) ("Copromisors are liable jointly if all of them have promised the entire performance of the contract. The effect of a joint obligation is that each joint promisor is liable for the whole performance jointly assumed.").

4.   Determan's reliance on the indemnification provision of the Purchase Agreement is misplaced. That provision, by its terms, relates to indemnification for claims, losses, damages, and related claims, and not to payment for the sale of the business. This provision does not support imposing joint and several liability for breach of the LLC's promise to pay Determan.

Determan also argues that because the LLC, Flugge, and Julius are all named plaintiffs, that they "consented to the personal jurisdiction of the [t]rial [c]ourt." Consent to the jurisdiction of the court cannot alter the express terms of the parties' agreement.

(a) A debt, obligation, or other liability of a limited liability company is *solely* the debt, obligation, or other liability of the company. *A member or manager is not personally liable, directly or indirectly, by way of contribution or otherwise, for a debt, obligation, or liability of the company solely by reason of being or acting as a member or manager.* This subsection applies regardless of the dissolution of the company.

(b) The failure of a limited liability company to observe formalities relating to the exercise of its powers or management of its activities and affairs is *not* a ground for imposing liability on a member or manager for a debt, obligation, or other liability of the company.

(Emphasis added.)

[¶25.]     While Plaintiffs' pleadings do not contain any request that the circuit court should disregard the corporate entity, the circuit court found the interests of Plaintiffs were "indistinguishable for purposes of the action." This finding seems to suggest a disregard of the corporate entity to impose personal liability on the LLC's members, Flugge and Julius.

[¶26.]     "Decisions about whether to pierce the corporate veil must be decided in accordance with the unique, underlying facts of each case." *Paul v. Bathurst*, 2023 S.D. 56, ¶ 21, 997 N.W.2d 644, 652 (quoting *Brevet Int'l, Inc. v. Great Plains Luggage Co.*, 2000 S.D. 5, ¶ 25, 604 N.W.2d 268, 274). "There are six factors to consider when determining whether equity demands a disregard of the corporate entity: '(1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; (5) fraudulent misrepresentation by corporate directors; and (6) use of the corporation to promote fraud, injustice or illegality.'" *Id.* ¶ 21, 997 N.W.2d at 652–53 (quoting *Brevet*, 2000 S.D. 5, ¶ 26, 604 N.W.2d at 274). "[A] court should

pierce the corporate veil only upon the strongest evidence of these factors." *Brevet*, 2000 S.D. 5, ¶ 26, 604 N.W.2d at 274 (alteration in original) (citation omitted).

[¶27.] Aside from the circuit court's remark that the interests of the LLC, Flugge, and Julius were "indistinguishable for purposes of the action," the circuit court engaged in no analysis that would support any of the traditional factors to disregard the corporate entity. *See Superior Homes, L.L.C. v. Comardelle*, No. CIV. 12-4126-KES, 2013 WL 6146051, at *4 (D.S.D. Nov. 21, 2013) (court rejected plaintiff's argument that "pleading joint and several liability and naming Comardelle and GoMotel together in its factual allegations states a claim against Comardelle personally because the two entities and their interests are indistinguishable," explaining that "using the two names interchangeably does not sufficiently plead a cause of action against one party when there are no other facts in the pleadings to support that claim."). Moreover, the circuit court made no factual findings supporting such a disregard of the corporate entity, and Determan's counterclaim was devoid of any such allegations. *See id.* (refusing to impose liability for breach of contract on an individual member of LLC, noting the "amended complaint contains no factual allegations supporting piercing, such as undercapitalization, commingling of funds, absence of corporate records, corporate payment of individual obligations, or other facts that would indicate some type of corporate fraud."). *See also* 18 C.J.S. Corporations § 39 ("One who seeks to have a court apply the exceptions to the rule of corporate separateness must plead facts sufficient to justify disregard of the corporate entity, and conclusory allegations of control are not sufficient to state a claim for piercing the corporate veil.").

[¶28.]    Under the terms of the Purchase Agreement, the LLC was responsible for paying Determan.  Nothing in the Purchase Agreement or the findings and conclusions of the circuit court shifts that responsibility to Flugge or Julius in their individual capacities.  Determan did not allege facts that would support disregarding the corporate entity, and the circuit court failed to delineate any such facts.

[¶29.]    We affirm judgment in favor of Determan but reverse the circuit court's imposition of joint and several liability against Flugge and Julius.

[¶30.]    JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.